IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WARNE KEAHI YOUNG, | ) | CIVIL NO. 11-00580 ACK-RLP |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | TO DENY DEFENDANT MICHAEL |
| vs. | ) | G.M. OSTENDORP'S MOTION TO |
| | ) | COMPEL MEDIATION AND/OR |
| COUNTY OF HAWAII, a municipal | ) | ARBITRATION; AND ORDER (1) |
| corporation; HAWAII ISLAND | ) | GRANTING IN PART AND DENYING |
| HUMANE SOCIETY S.P.C.A., a | ) | IN PART DEFENDANT OSTENDORP'S |
| non-profit corporation; DONNA | ) | MOTION TO STAY THE CURRENT |
| WHITAKER, Individually and in | ) | PROCEEDINGS AND (2) DENYING |
| her official capacity as | ) | DEFENDANT OSTENDORP'S MOTION |
| Executive Director of the | ) | TO DISQUALIFY PLAINTIFF'S |
| Hawaii Island Humane Society | ) | COUNSELS |
| S.P.C.A.; STARR K. YAMADA, | ) | |
| Individually and in her | ) | |
| official capacity as a Humane | ) | |
| Officer; MICHAEL G.M. | ) | |
| OSTENDORP; CARROLL COX; | ) | |
| DARLEEN R.S. DELA CRUZ; | ) | |
| ROBERTA KAWENA YOUNG; DOE | ) | |
| DEFENDANTS 1-50, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO DENY DEFENDANT MICHAEL G.M.
OSTENDORP'S MOTION TO COMPEL MEDIATION AND/OR ARBITRATION;[1]
AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
OSTENDORP'S MOTION TO STAY THE CURRENT PROCEEDINGS AND (2)
DENYING DEFENDANT OSTENDORP'S MOTION TO DISQUALIFY PLAINTIFF'S
<u>COUNSELS</u>

---

[1]  Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court.  A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation.  If no
objections are filed, no appellate review will be allowed.

Before the Court is Defendant Michael G.M. Ostendorp's ("Defendant Ostendorp") Motions to (1) Compel Mediation and/or Arbitration ("Motion to Compel"); (2) Stay the Current Proceedings ("Motion to Stay"); and (3) Disqualify Plaintiff's Counsels ("Motion to Disqualify"), filed concurrently on February 17, 2012 (collectively "Motions"). See ECF No. 24. On February 23, 2012, Defendants Carroll Cox ("Defendant Cox") and Darleen R.S. Dela Cruz ("Defendant Dela Cruz") filed Substantive Joinders to Defendant Ostendorp's Motions. See ECF Nos. 30, 31. On March 6, 2012, Plaintiff Warne Keahi Young ("Plaintiff") filed a Memorandum in Opposition to Defendant Ostendorp's Motions. See ECF No. 38. On March 20, 2012, Defendant Ostendorp filed a Reply Memorandum to Plaintiff's Memorandum in Opposition.[2] See ECF No. 40.

On February 22, 2012, the Court found this matter suitable for disposition without a hearing pursuant to LR 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii. See ECF No. 25. Based on the following, and after careful consideration of the Motions, the

_____

[2] On March 22, 2012, Defendants Cox and Dela Cruz also filed Substantive Joinders to Defendant Ostendorp's Reply Memorandum, see ECF Nos. 41, 42, but they will be disregarded by the Court. See LR 7.9 ("No substantive joinder in a reply may be filed; a party that has joined in a motion may file its own reply (as opposed to a joinder in the movant's reply) by the reply deadline only if the opposition has addressed matters unique to that joining party.").

supporting and opposing memoranda, declarations, and exhibits
attached thereto, and the record established in this action, the
Court HEREBY FINDS AND RECOMMENDS that Defendant Ostendorp's
Motion to Compel be DENIED.[3]  The Court HEREBY ORDERS that
Defendant Ostendorp's Motion to Stay is GRANTED IN PART AND
DENIED IN PART, and Defendant Ostendorp's Motion to Disqualify is
DENIED.[4]

BACKGROUND

This case arises out of the alleged illegal seizure and
killing of seventeen of Plaintiff's dogs from his Big Island
residence by Defendant Hawaii Island Humane Society S.P.C.A.

---

[3] There is a split of authority among the district courts
as to whether a motion to compel arbitration is a dispositive
motion, which would require the undersigned Magistrate Judge to
issue a findings and recommendation pursuant to 28 U.S.C. §
636(b)(1)(B), or a non-dispositive motion, which can be disposed
of with an order pursuant to 28 U.S.C. § 636(b)(1)(A).  See,
e.g., Amisil Holdings Ltd. v. Clarium Capital Mgmt., 622 F. Supp.
2d 825, 827 n.1 (N.D. Cal. 2007) (listing cases).  Although not
specifically addressed in this district, it appears that the
local practice is to treat such motions as dispositive.  See,
e.g., Hawaiian Telcom Commc'ns, Inc. v. Tata Am. Int'l Corp.,
Civ. No. 10-00112 HG-LEK, 2010 WL 2594482 (D. Haw. May 24, 2010)
(issuing findings and recommendation to grant motion to compel
arbitration).  Therefore, in an abundance of caution and in
accordance with the local practice, this Court issues the instant
Findings and Recommendation to the District Judge.

[4] Unlike motions to compel arbitration, motions to stay and
motions to disqualify counsel are uniformly acknowledged as non-
dispositive pretrial matters that a Magistrate Judge may decide.
See McClelland v. Merck & Co., Civ. No. 06-00543 JMS-BMK, 2007 WL
178293, at *2 (D. Haw. Jan. 19, 2007) (motions to stay); United
States v. Bennett, Crim. No. 06-00068 SOM-LEK, 2006 WL 2793170,
at *2 (D. Haw. Sept. 27, 2006) (motions to disqualify).

("Defendant HIHS") and its agents in late 2009. Plaintiff also
alleges wrongdoing by his mother, Defendant Roberta Kawena Young
("Defendant Young"), and the legal professionals, including
Defendants Ostendorp, Cox, and Dela Cruz, who were retained by
Defendant Young. On January 9, 2012, Plaintiff filed his First
Amended Complaint against Defendants County of Hawaii, HIHS,
Donna Whitaker, Starr Yamada, Ostendorp, Carroll Cox, Darleen
Dela Cruz and Young (collectively "Defendants") alleging the
following eighteen claims: violations of 42 U.S.C. § 1983 (Counts
I and II); negligence/gross negligence (Counts III and XVI);
negligent training and/or supervision (Count IV); vicarious
liability (Count V and VI); breach of contract (Count VII); legal
malpractice (Count VIII); breach of fiduciary duty (Count IX);
failure to disclose conflict of interest (Count X); fraud and
misrepresentation (Count XI); undue influence (Count XII); civil
conspiracy (Count XIII); negligent and/or intentional infliction
of severe emotional distress (Count XIV); fraud (Count XV);
conversion (Count XVII); and trespass (Count XVIII). See ECF No.
8.

        According to Plaintiff, on October 1 and 2, 2009,
Plaintiff and Defendant Young consulted with Defendants Ostendorp
and Cox on Oahu to obtain legal advice for Plaintiff regarding
Defendant HIHS' illegal entry into Plaintiff's home, seizure of
Plaintiff's dogs, and potential criminal charges against

Plaintiff.  See id. at ¶¶ 31, 34.  Allegedly, Defendant

Ostendorp, acting as Plaintiff's attorney, contacted the Hilo

prosecutor's office as well as Plaintiff's psychologist to

discuss Plaintiff's legal matters concerning Defendant HIHS.  See

id. at ¶¶ 32-33, 35.  On October 5, 2009, Defendants Ostendorp

and Cox allegedly also traveled with Plaintiff to the Big Island

for further consultation and investigation.  See id. at ¶ 36.

During this trip, Defendant Ostendorp allegedly met with

Defendant Yamada at the HIHS to discuss the allegations against

Plaintiff for animal cruelty.  See id. at ¶ 38.

On October 7, 2009, Defendant Ostendorp and Defendant

Young signed a retainer agreement, under which Defendant

Ostendorp would be "representing [Defendant Young] in protecting

[her] financial assets, reducing [her] financial liabilities and

to help keep Warne Keahi Young out of jail."  See id. at ¶ 40;

Ostendorp Decl. Ex. A, at 1.  The retainer agreement provided for

alternative resolution in the case of a dispute between the

parties as follows:

> As we discussed, if you ever have any
> questions regarding this representation, we
> encourage you to ask them promptly and we are
> confident that appropriate answers can be
> provided to satisfy your inquiry.  If that
> does not occur, and you believe that a problem
> needs formal resolution, the following
> discussion is how we will solve such a
> problem.
>
> First, we will jointly undertake mediation.
> Unless we agree to the contrary, the Dispute

> Prevention & Resolution office in Honolulu
> will choose the mediator. We will jointly in
> good faith participate in at least one
> mediation session, scheduled by the mediator,
> prior to taking any further action.
>
> Second, if mediation does not resolve the
> problem then, with the exception of injunctive
> or other equitable action, all disputes must
> be submitted to binding arbitration. As was
> true for mediation, the arbitration shall be
> conducted under the then-existing rules of the
> Dispute Prevention & Resolution office in
> Honolulu.

Id. at 3. Below the signature of Defendant Ostendorp, the
retainer agreement states, "Roberta Kawena Young hereby engages
the Law Office of Michael G.M. Ostendorp as [sic] his legal
counsel and otherwise agrees to honor the terms hereof." Id.
Under this statement, Defendant Young signed on her signature
line and dated the agreement October 7, 2009. Id. Plaintiff was
not a signatory to the retainer agreement.

Also on October 7, 2009, Defendant Ostendorp allegedly
drafted a General Power of Attorney appointing Defendant Young as
Plaintiff's Attorney-in-Fact. See First Am. Compl. ¶ 41. In
addition, Defendant Ostendorp allegedly held a telephone
conference with Defendant HIHS, drafted a letter to Defendant
HIHS, and sent an email to Defendant Yamada. See id. On October
8, 10, and 12, 2009, Defendants Ostendorp and Cox allegedly met
again with Plaintiff to discuss his legal matters. See id. at ¶¶
44, 16, 47. Defendant Ostendorp allegedly further exchanged a
series of emails with Defendant Yamada regarding the allegations

6

against Plaintiff for animal cruelty from October 12-14, 2009.
See id. at ¶ 48.

On October 15, 2009, Defendant Young allegedly
terminated the attorney-client relationship with Defendant
Ostendorp via certified mail. See id. at ¶ 49. On October 19,
2009, Defendant Ostendorp allegedly confirmed the termination of
the attorney-client relationship by letter to Defendant Young.
See id. at ¶ 50. Defendant Ostendorp's attached billing
statement allegedly was addressed to "Roberta K. Young/Warne K.
Young (10/1/09-10/15/09)." See id.

On October 29, 2009, Plaintiff filed a complaint
against Defendants Ostendorp and Cox with the Office of
Disciplinary Counsel ("ODC"). See Ostendorp Decl. Ex. D. On
November 18, 2009, Defendant Ostendorp responded to Plaintiff's
ODC complaint by letter. See Ickes Decl. Ex. 2. The letter
states, in relevant part, that "Keahi Young was never my client."
Id. at 1. Defendant Ostendorp explains that his "role in keeping
[Defendant Young's] son out of jail did not include representing
Keahi. Mr. Tommy Waters was the attorney of record for Keahi
Young. My negotiations with the Humane Society on behalf of Ms.
Young were to address the issues of her property and the dogs."
Id. at 2. Defendant Ostendorp further states that the
allegations in Plaintiff's ODC complaint are "just ridiculous,

especially in light of the fact that I was never his attorney."
Id. at 3.

ANALYSIS

**A.   Timeliness of Opposition**

As an initial matter, Defendant Ostendorp contends that
Plaintiff's Memorandum in Opposition should be disregarded by the
Court or stricken from the record because it was filed four days
late.  According to the Local Rules, "an opposition to a non-
hearing motion shall be served and filed not more than fourteen
(14) days after service of the motion."  LR 7.4.  If an
opposition is untimely filed, it "may be disregarded by the court
or stricken from the record."  Id.

Here, Plaintiff's opposition was not filed until March
6, 2012, or eighteen days after Defendant Ostendorp's Motions
were served.  The Court notes, however, that the Motions were
served via U.S. Mail, pursuant to Rule 5(b)(2)(C) of the Federal
Rules of Civil Procedure ("FRCP").  See Certificate of Service,
ECF No. 24-11.  According to FRCP 6(d), "[w]hen a party may or
must act within a specified time after service and service is
made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added
after the period would otherwise expire under Rule 6(a)."  Fed.
R. Civ. P. 6(d).  As a result, Plaintiffs' opposition was
untimely filed by only one day.  The Court also notes that
Defendant Ostendorp was not prejudiced by this untimely filing,

8

as he still had – and took – the full fourteen days to file his reply.[5] Therefore, although the Court is permitted to disregard or strike Plaintiff's untimely opposition from the record, the Court nevertheless elects to consider it.[6]

**B.    Motion to Compel Mediation and/or Arbitration**

Defendant Ostendorp moves to compel mediation and/or arbitration pursuant to Hawaii's Uniform Arbitration Act, codified in Chapter 658A of the Hawaii Revised Statutes ("HRS"). Under Hawaii law, "[w]hen presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement." Douglass v. Pflueger Haw., Inc., 110 Hawai'i 520, 530, 135 P.3d 129, 139 (2006) (quoting Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 444, 834 P.2d 1294, 1300 (1992)).

Hawaii courts have "long recognized the strong public policy supporting Hawaii's arbitration statutes . . . [T]he

---

[5]  Unlike a hearing motion, where a reply must be served and filed not less than fourteen days prior to the *date of the hearing*, and therefore an untimely opposition would give the movant less time to file a reply, a reply to a non-hearing motion need not be served and filed until fourteen days after *service of the opposition*.  See LR 7.4.

[6]  Despite this decision, the Court strongly cautions all parties to abide by the Court's filing deadlines as this action proceeds.

proclaimed public policy . . . is to encourage arbitration as a means of settling differences and thereby avoiding litigation." Id. at 110 Hawai'i 530-31, 135 P.3d 139-40 (quoting Bateman Constr., Inc. v. Haitsuka Bros., Ltd., 77 Hawai'i 481, 484, 889 P.2d 58, 61 (1995)).  However, "[e]ven though arbitration has a favored place, there must still be an underlying agreement between the parties to arbitrate.  Without an agreement to arbitrate, a court may not force parties to engage in arbitration."  Id. at 110 Hawai'i 531, 135 P.3d 140 (quoting Luke v. Gentry Realty, Ltd., 105 Hawai'i 241, 247, 96 P.3d 261, 267 (2004)).  See also Moss v. Am. Int'l Adjustment Co., 86 Hawai'i 59, 63, 947 P.3d 371, 375 (1997) ("[A]rbitration must be agreed upon by the parties and evinced by a written agreement, despite the strong policy in its favor.") (citations omitted).

    1.    **Existence of Arbitration Agreement**

        In order to be valid and enforceable, an arbitration agreement must have three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration.  Douglass, 110 Hawai'i at 531, 135 P.3d at 140 (citing Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 238, 921 P.2d 146, 158 (1996)).  The Court will address each of these elements in turn.

        a.    **Writing and Bilateral Consideration**

The parties do not dispute that the arbitration provision in this case constitutes a writing. The provision is clearly set forth in the retainer agreement between Defendant Ostendorp and Defendant Young. Therefore, the Court finds that the arbitration provision satisfies the writing requirement.

The parties also do not dispute that the arbitration provision has bilateral consideration. In Hawaii,

> [i]t is well-settled that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract. Consideration is defined as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment.

Id. at 110 Hawai'i 534, 135 P.3d 143 (quoting Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 11126, 1130 (7th Cir. 1997)). The arbitration provision expressly provides that, if a problem needs formal resolution, both Defendant Ostendorp and Defendant Young will "jointly" undertake mediation, and should that fail, binding arbitration. See Ostendorp Decl. Ex. A, at 3. On its face, the provision is supported by bilateral consideration, that is, both Defendant Ostendorp and Defendant Young would forgo their respective rights to a judicial forum and accept the mediation, and possibly arbitration, process. See Brown, 82 Hawai'i at 239-40, 921 P.2d at 159-60 (concluding that "the agreement is supported by bilateral consideration that [plaintiff] and KFC would forgo their respective rights to a judicial forum" based upon the "manifestly unambiguous"

11

recitation that "KFC and [plaintiff] agree to submit to binding arbitration any controversies concerning [plaintiff's] compensation, employment[,] or termination of employment"). Unlike cases where the arbitration provision is deemed illusory, there is no reservation of rights by one party to unilaterally alter the agreement. See, e.g., Douglass, 110 Hawai'i at 535, 135 P.3d 144. As a result, the Court finds that the arbitration provision satisfies the bilateral consideration requirement.

### b. Unambiguous Intent to Submit to Arbitration

"Arbitration is a matter of contract; so a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." Sher v. Cella, 114 Hawai'i 263, 267, 160 P.3d 1250, 1254 (App. 2007) (quoting Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2d Cir. 2003)). See also Boskoff v. Yano, 217 F. Supp. 2d 1077, 1088 (D. Haw. 2001) (stating that "Hawaii law requires that there be mutual assent or a meeting of the minds on all essential elements or terms in order to create a binding contract") (internal quotations and citation omitted). The parties agree that Plaintiff was not a signatory to the retainer agreement between Defendant Ostendorp and Defendant Young. Therefore, Plaintiff cannot be bound by the express provisions of that agreement. Id.

Absent an express agreement to arbitrate, Hawaii courts have recognized five limited theories upon which it is willing to

12

enforce an arbitration agreement against a nonsignatory: (1)
incorporation by reference; (2) assumption; (3) agency; (4) veil-
piercing/alter ego; and (5) estoppel.[7] Id. (quoting Thomson-CSC,
S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).
Defendant Ostendorp appears to be arguing an equitable estoppel
theory as a basis for enforcing the arbitration provision
contained in the retainer agreement against Plaintiff:

> Plaintiff's entire First Amended Complaint as
> it pertains to Defendant Ostendorp is premised
> on Plaintiff's allegation that there was a
> contractual relationship between Plaintiff and
> Defendant Ostendorp stemming from the Retainer
> Agreement.  If Plaintiff wants the benefit of
> the Agreement, he certainly must suffer the
> consequences, such as submitting his claims to
> mediation/arbitration.

Def.'s Mem. Supp. Mot. 7-8.

"[T]he doctrine of equitable estoppel precludes a party
from enjoying the same rights and benefits under a contract while
at the same time avoiding its burdens and obligations."  Sher,

---

[7]  Hawaii courts apparently also recognize a third-party
beneficiary theory.  See Sher, 114 Hawai'i at 269, 160 P.3d at
1256 ("A third-party beneficiary of a contract containing an
arbitration clause can be subject to that clause and compelled to
arbitrate on the demand of a signatory.") (quoting InterGen N.V.
v. Grina, 344 F.3d 134, 146 (1st Cir. 2003)).  But see Comer v.
Micor, Inc., 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party
beneficiary might in certain circumstances have the power to sue
under a contract; it certainly cannot be bound to a contract that
it did not sign or otherwise assent to.") (emphasis in original).
However, Defendant Ostendorp does not make a third-party
beneficiary argument until his reply, see Def.'s Reply Mem. 5,
and the Court therefore will not consider it.  See LR 7.4 ("Any
argument raised for the first time in the reply shall be
disregarded.") (emphasis added).

114 Hawai'i at 268, 160 P.3d at 1255 (quoting InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003)). In the arbitration context, "a party may be estopped from asserting that the lack of his signature on a written contract precludes the enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)). See also Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (stating that nonsignatories have been held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement") (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 199 (3rd Cir. 2001)).

The Ninth Circuit's discussion in Comer is instructive. In Comer, the plaintiff was a participant in employee pension and profit-sharing plans who sued the plans' investment manager under the Employee Retirement Income Security Act (ERISA). See id. at 1099-1100. The Ninth Circuit found that there was no evidence that the plaintiff knowingly exploited the agreements containing the arbitration clauses despite never having signed the agreements. Id. at 1102. The Court reasoned:

> Prior to his suit, [plaintiff] was simply a
> participant in trusts managed by others for

his benefit. He did not seek to enforce the
terms of the management agreements, nor
otherwise to take advantage of them. Nor did
he do so by bringing this lawsuit, which he
bases entirely on ERISA, and not on the
investment management agreements. [The
investment manager's] attempt to shoehorn
[plaintiff's] status as a passive participant
in the plans into his "knowing exploitation"
of the investment agreements fails.

Id. (internal brackets omitted). As a result, the Court held

that equitable estoppel theory did not apply. Id. See also

Sher, 114 Hawai'i at 269, 160 P.3d at 1256 (holding that seller's

agents, by accepting the commission resulting from the sale of

real property, "have not embraced the Acquisition Agreement to

the degree necessary to subject them to its terms, including the

arbitration provision contained therein").

Similarly, here, there is no evidence that Plaintiff

knowingly exploited the retainer agreement containing the

arbitration clause despite never having signed the agreement.

Prior to this lawsuit, Plaintiff was simply a passive participant

in a legal effort, controlled by his mother, for his indirect

benefit. Indeed, the evidence shows that the primary goal of

Defendant Ostendorp's representation of Defendant Young was to

protect Defendant Young's financial assets. See Ickes Decl. Ex.

2 at 2. After Defendant Ostendorp's representation of Defendant

Young concluded, Defendant Ostendorp maintained that he was

"never [Plaintiff's] attorney" and that Plaintiff had his own

attorney of record. Id. at 2-3. Defendant Ostendorp cannot have

15

it both ways: on one hand, he disavows the retainer agreement by claiming that he was never Plaintiff's attorney; on the other, he seeks to enforce it against Plaintiff on the basis that retainer agreement created a contractual relationship between Plaintiff and himself.  See <u>Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.</u>, 621 F.3d 981, 986 (9th Cir. 2010) ("The doctrine of unclean hands can also bar a defendant from asserting an equitable defense.");  <u>7's Enters., Inc. v. Del Rosario</u>, 111 Hawai'i 484, 494-95, 143 P.3d 23, 33-34 (2006) (explaining Hawaii courts' application of the doctrine of unclean hands).

Moreover, in this case, Plaintiff did not seek to enforce the terms of the retainer agreement, nor otherwise take embrace or take advantage of it.  Nor did he do so by bringing this lawsuit, as Plaintiff claims that the basis for his breach of contract claim is not retainer agreement but rather some kind of oral contract.[8]  <u>See</u> Pl.'s Mem. Opp. Mot. 3.  For these reasons, the Court finds that Defendant Ostendorp's equitable estoppel argument fails.  Therefore, the Court concludes that Defendant Ostendorp has failed to establish that Plaintiff demonstrated an unambiguous intent to submit to arbitration, and

---

[8]  The Court makes no finding as to whether Plaintiff's breach of contract claim, premised on an alleged "contractual relationship without a writing," <u>see</u> Pl.'s Mem. Opp. Mot. 3, has merit or would survive a motion to dismiss or other dispositive motion.

a valid and enforceable arbitration agreement between Plaintiff and Defendant Ostendorp does not exist.

## 2. Abitrability of Dispute

Moreover, even assuming *arguendo* that the retainer agreement was enforceable against Plaintiff, the Court finds that Plaintiff's claims against Defendant Ostendorp are not arbitrable under the scope of the arbitration provision. The Court looks to the language of the arbitration clause to determine whether the dispute is arbitrable. <u>Koolau Radiology</u>, 73 Haw. at 447, 834 P.2d at 1301. "An arbitration agreement, like any contract, must be construed to give effect to the intention of the parties." <u>Wayland Lum Constr., Inc. v. Kaneshige</u>, 90 Hawai'i 417, 422, 978 P.3d 855, 860 (1999). In interpreting a contract, it is well-settled that

> courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous. In fact, contractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech. The court should look no further than the four corners of the document to determine whether an ambiguity exists.

<u>Williams v. Aona</u>, 121 Hawai'i 1, 15, 210 P.3d 501, 515 (2009) (citations omitted). When the arbitration clause is clear and unambiguous, the scope of the arbitration clause and its interpretation are questions of law for the court to decide. <u>Koolau Radiology</u>, 73 Haw. at 447, 834 P.2d at 1301.

The Hawaii Supreme Court's analysis in Koolau Radiology is on point. In Koolau Radiology, the parties entered into a lease which contained a provision providing, "If the parties do not agree on the rent for the last optional term at least 30 days prior to commencement thereof, they shall forthwith appoint an impartial real estate appraiser to determine the rent." Id. at 73 Haw. 437 n.3, 834 P.2d 1296 n.3. The Court found that

> The language of the arbitration clause in this case is clear - it mandates the appointment of a real estate appraiser to determine lease values. It does not suggest in any way that a real estate appraiser would arbitrate the validity of an alleged oral agreement modifying the written lease or issues regarding legal defenses, such as the statute of frauds or the parol evidence rule. To allow arbitration of the validity of the alleged oral agreement by a real estate appraiser would clearly broaden the scope of the arbitration clause beyond its plain meaning and the apparent intent of the parties.

Id. at 73 Haw. 447, 834 P.2d 1301. As a result, the Court concluded that arbitration was inappropriate because the underlying dispute, as set forth in the plaintiff's claim for declaratory judgment, raised issues which extended beyond the scope of the arbitration agreement. Id. at 73 Haw. 447, 834 P.2d 1301-02.

Similarly, the arbitration provision at issue in this case is clear and unambiguous. The retainer agreement expressly provides

> As we discussed, if you ever have any
> questions regarding this representation, we
> encourage you to ask them promptly and we are
> confident that appropriate answers can be
> provided to satisfy your inquiry. If that
> does not occur, and **you believe that a problem
> needs formal resolution**, the following
> discussion is how we will solve such a
> problem.

Ostendorp Decl. Ex. A, at 3 (emphasis added).  The plain language

of the arbitration provision mandates mediation and/or

arbitration when *Defendant Young* believes that a problem needs

formal resolution.  This is not a case where the scope of the

arbitration clause is broad, such as those provisions covering

claims "related to" or "in connection with"; to the contrary, the

instant arbitration clause is specific to those problems that

Defendant Young believes needs formal resolution.  See <u>Cape</u>

<u>Flattery, Ltd. v. Titan Maritime, LLC</u>, 647 F.3d 914, 922-23 (9th

Cir. 2011) (narrowly interpreting "arising under" arbitration

provision); <u>Indus. Elecs. Corp. of Wis. v. iPower Distribution</u>

<u>Grp., Inc.</u>, 215 F.3d 677, 680 (7th Cir. 2000) (nonsignatory

third-party beneficiary not compelled to arbitrate claims because

claims did not arise out of the contract from which it derived

its third-party status).  Here, Plaintiff's claims against

Defendant Ostendorp do not arise from a problem that Defendant

Young believes needs formal resolution.  To allow arbitration of

Plaintiff's claims would clearly broaden the scope of the

arbitration clause beyond its plain meaning and the apparent

intent of the parties.  Therefore, the Court concludes that Plaintiff's claims against Defendant Ostendorp, as set forth in the First Amended Complaint, are not arbitrable.  In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Defendant Ostendorp's Motion to Compel be DENIED.

## C.    Motion to Stay Proceedings

HRS § 658A-7(g) states, in relevant part, that, "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration."  Haw. Rev. Stat. § 658A-7(g).  Having found that mediation and/or arbitration should not be compelled, see *supra* Section B, the Court also finds that a stay pending arbitration is not warranted.

However, HRS § 658A-7(f) provides that, "[i]f a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section."  Haw. Rev. Stat. § 658A-7(f).  As the Court has determined that issuing a Findings and Recommendation to the District Judge is appropriate, see *supra* n.2, the Court GRANTS IN PART AND DENIES IN PART Defendant Ostendorp's Motion to Stay, and ORDERS that this action be stayed until the District Judge issues a final decision regarding Defendant Ostendorp's Motion to Compel.

**D. Motion to Disqualify Plaintiff's Counsel**

Defendant Ostendorp moves to disqualify Plaintiff's counsel, Donald L. Wilkerson, Esq. and Te-Hina Ickes, Esq., pursuant to HRS § 658A-8. HRS § 658A-8(a) provides,

> Before an arbitrator is appointed and is authorized and able to act, **the court, upon motion of <u>a party to an arbitration proceeding</u> and for good cause shown, <u>may</u> enter an order for <u>provisional remedies</u>** to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.

Haw. Rev. Stat. § 658A-8(a) (emphasis added).

HRS § 658A-8(a) is expressly limited to motions made by "a party to an arbitration proceeding." This language clearly contemplates a determination by the court or an agreement by the parties that the underlying dispute, is, in fact, arbitrable. <u>See, e.g.</u>, <u>Ross v. Blanchard</u>, 59 Cal. Rptr. 783, 784 (Cal. Ct. App. 1967) (arbitration ordered by court); <u>Bancamerica Commercial Corp. v. Brown</u>, 806 P.2d 897, 898 (Ariz. Ct. App. 1990) (parties agree dispute is subject to arbitration). Here, the undersigned Magistrate Judge has found that Plaintiff's claims against Defendant Ostendorp, as set forth in the First Amended Complaint, are not arbitrable. <u>See</u> *supra* Section B.2. Until there is a final determination by the District Judge regarding arbitrability, the Court finds that Defendant Ostendorp's Motion to Disqualify is premature. <u>See</u> <u>Opuna, LLC v. Sabbagh</u>, Civ. No.

21

05-00488 SOM-LEK, 2006 WL 2374750, at *9 (D. Haw. Aug. 15, 2006)
(vacating magistrate judge's disqualification order to permit
state court to consider the matter on remand).

In addition, HRS § 658A-8(a) addresses the court's
authority to enter an order for "provisional remedies."  Although
undefined in HRS Chapter 658A, Black's Law Dictionary defines
"provisional remedy" as, "A temporary remedy awarded before
judgment and pending the action's disposition, such as a
temporary restraining order, a preliminary injunction, a
prejudgment receivership, or an attachment.  Such a remedy is
intended to maintain the status quo by protecting a person's
safety or preserving property."  Black's Law Dictionary 1408 (9th
ed. 2009).  Consistent with this definition, case law brought
pursuant to Section 8 of the Uniform Arbitration Act discusses
temporary remedies intended to maintain the status quo and
prevent irreparable harm only until an arbitration proceeding
could be concluded.  See, e.g., Salvucci v. Sheehan, 212 N.E.2d
243 (Mass. 1965) (temporary restraining order); Bancamerica, 806
P.2d at 897 (attachment); Lambert v. Super. Ct., 279 Cal. Rptr.
32 (Cal. Ct. App. 1991) (mechanic's lien); Hughley v. Rocky
Mountain Health Maint. Org., 927 P.2d 1325, 1331-32 (Colo. 1996)
(preliminary injunction necessary to "ensure that the promise of
arbitration is not hollow and that if successful, an award by the
arbitrator is not an empty victory because conditions permitting

22

a remedy have changed"). Unlike the aforementioned remedies, it does not appear that the drafters of the Uniform Arbitration Act intended to include disqualification of counsel as a "provisional remedy."

Finally, the statute's use of the word "may" indicates that the Court's decision to award provisional remedies is purely permissive. Given the lack of a final determination as to arbitrability by the Court and Defendant Ostendorp's apparent inability to use HRS § 658A-8's "provisional remedy" language to obtain the relief sought, the Court DENIES Defendant Ostendorp's Motion to Disqualify.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Defendant Michael G.M. Ostendorp's Motion to Compel Mediation and/or Arbitration be DENIED. The Court HEREBY ORDERS that Defendant Ostendorp's Motion to Stay the Current Proceedings is GRANTED IN PART AND DENIED IN PART, and ORDERS that this action be stayed until the District Judge issues a final decision regarding Defendant Ostendorp's Motion to Compel Mediation and/or Arbitration. The Court HEREBY ORDERS that Defendant Ostendorp's Motion to Disqualify Plaintiff's Counsels is DENIED.

IT IS SO FOUND AND RECOMMENDED AND SO ORDERED.

///

23

DATED AT HONOLULU, HAWAII, APRIL 3, 2012.



_____
Richard L. Puglisi
United States Magistrate Judge

YOUNG V. COUNTY OF HAWAII ET AL.; CIVIL NO. 11-00580 ACK-RLP;
FINDINGS AND RECOMMENDATION TO DENY DEFENDANT MICHAEL G.M.
OSTENDORP'S MOTION TO COMPEL MEDIATION AND/OR ARBITRATION; AND
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
OSTENDORP'S MOTION TO STAY THE CURRENT PROCEEDINGS AND (2)
DENYING DEFENDANT OSTENDORP'S MOTION TO DISQUALIFY PLAINTIFF'S
COUNSELS