IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WARNE KEAHI YOUNG, | )     CIVIL NO. 11-00580 ACK-RLP |
|          Plaintiff, | ) |
|     vs. | ) |
| COUNTY OF HAWAII, a municipal corporation; HAWAII ISLAND HUMANE SOCIETY S.P.C.A., a non-profit corporation; DONNA WHITAKER, Individually and in her official capacity as Executive Director of the Hawaii Island Humane Society S.P.C.A.; STARR K. YAMADA, Individually and in her official capacity as Humane Officer; MICHAEL G.M. OSTENDORP; CARROL COX; DARLEEN R.S. DELA CRUZ; ROBERTA KAWENA YOUNG; DOE DEFENDANTS 1-50, | ) |
|          Defendants. | ) |

ORDER ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATIONS AS MODIFIED, LIFTING THE STAY, AND RECOMMITTING
DEFENDANT OSTENDORP'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSELS
TO THE MAGISTRATE JUDGE

PROCEDURAL BACKGROUND

This cases arises out of the alleged illegal seizure and killing of Plaintiff Warne Keahi Young's ("Plaintiff") seventeen dogs by Defendant Hawaii Island Humane Society S.P.C.A. ("HIHS") and its agents in late 2009. The Magistrate Judge's Findings and Recommendation and Order at issue arise out of Defendant Michael G.M. Ostendorp's ("Ostendorp") alleged legal representation of Plaintiff and a retainer agreement between

Ostendorp and Plaintiff's mother, Roberta Kawena Young ("Defendant Kawena Young"), that included a dispute resolution clause.

On September 23, 2011, Plaintiff filed suit against County of Hawaii; HIHS; Donna Whitaker, executive director of HIHS; Starr K. Yamada, Humane Officer; Ostendorp; Carrol Cox; Darleen R.S. Dela Cruz; Roberta Kawena Young; and Doe Defendants 1-50 (collectively, "Defendants"). See Doc. No. 1.  On January 9, 2012, Plaintiff filed a First Amended Complaint. See Doc. No. 8.  Plaintiff filed a Second Amended Complaint ("Sec. Am. Compl.") on March 30, 2012.  Doc. No. 44.

Plaintiff's Second Amended Complaint alleges the following twenty claims: violations of 42 U.S.C. § 1983 (Counts I, II, and III); violations of equal protection (Count IV); negligence (Count V); negligent training and/or supervision (Count VI); vicarious liability of County of Hawaii (Count VII); vicarious liability of HIHS (Count VIII); breach of contract (Count IX); legal malpractice (Count X); breach of fiduciary duty (Count XI); failure to disclose conflict of interest (Count XII); fraud and misrepresentation (Count XIII); undue influence (Count XIV); civil conspiracy (Count XV); negligent and/or intentional infliction of severe emotional distress (Count XVI); fraud (Count XVII); negligence/gross negligence (Count XVIII); conversion

(Count XIX); and trespass (Count XX).[1/]  Sec. Am. Compl. ¶¶ 92-174.

On February 17, 2012, Ostendorp filed a motion to compel mediation and/or arbitration ("Ostendorp's Motion to Compel"), to stay current proceedings ("Ostendorp's Motion to Stay"), and a motion to disqualify Plaintiff's counsels ("Ostendorp's Motion to Disqualify"), along with a supporting memorandum.[2/3/]  Doc. No. 24.  Defendants Cox, an investigator employed by Ostendorp, and Cruz, a notary public hired by Ostendorp, filed joinders in Ostendorp's Motions.  Doc. Nos. 30-

[1/]The claims asserted against Ostendorp are violation of 42 U.S.C. § 1983, negligence, breach of contract, legal malpractice, breach of duty, failure to disclose conflict of interest, fraud and misrepresentation, undue influence, civil conspiracy, negligence/or intentional infliction of severe emotional distress, fraud, and trespass.  See Sec. Am. Compl. ¶¶ 92-174.

[2/]Also attached to the motion were a Declaration by Ostendorp and Exhibits A-H.  See Doc. No. 24.  The exhibits are the retainer agreement at issue (Ex. A.), a letter dated February 2, 2012, from Ostendorp to Plaintiff's attorneys (Ex. B), a letter in response from Plaintiff's attorneys to Ostendorp dated February 7, 2012 (Ex. C.), Plaintiff's letter dated October 29, 2009 to the Office of Disciplinary Counsel (Ex. D.), a search warrant for Plaintiff's residence (Ex. E), a general power of attorney in which Plaintiff appoints his mother as his attorney-in-fact (Ex. F.), a docket entry reflecting Plaintiff's motion for reconsideration in a state court criminal case (Ex. G.), and a docket entry reflecting Plaintiff's change of plea in that same criminal case (Ex. H.).

[3/]Although Ostendorp only filed one document in which he moved for his three requests, the Court will refer to the motions separately in the text of this Order.  The Court will cite to Ostendorp's memorandum that covers all three requests as "Ostendorp's Mot. Mem.".

31; <u>see</u> Sec. Am. Compl. ¶¶ 7-8.  On March 6, 2012, Plaintiff

filed an opposition to Ostendorp's Motions ("Pl.'s Opp'n").[4/]

Doc. No. 38.  Ostendorp filed a reply ("Ostendorp's Reply") on

March 20, 2012.[5/6/]  Doc. No. 40.

   On April 3, 2012, the Magistrate Judge issued a

findings and recommendation to deny Ostendorp's Motion to Compel

(the "F&R"); and order (1) granting in part and denying in part

Ostendorp's motion to stay the current proceedings and (2)

denying Ostendorp's motion to disqualify Plaintiff's counsels

(the "Magistrate's Order").  Doc. No. 45.

   On April 17, 2012, Ostendorp filed an objection to the

F&R and the Magistrate's Order ("Ostendorp's Obj.").[7/]  Doc. No.

49.  The Court finds this matter suitable for disposition without

a hearing pursuant to Local Rule 7.2(d).

<strong><u>FACTUAL BACKGROUND</u></strong>[8/]

---

   [4/]Attached to Plaintiff's Opposition were declarations by
Plaintiff's counsels and Exhibits 1 and 2, the retainer agreement
and a letter from the Office of Disciplinary Counsel to Plaintiff
accompanied by Ostendorp's response to Plaintiff's claim,
respectively.  Doc. No. 38.

   [5/]Attached to Ostendorp's Reply was Exhibit I, a series of
e-mails between Ostendorp and Defendant Yamada.  Doc. No. 40.

   [6/]Defendants Cox and Cruz filed joinders in Ostendorp's
Reply.  Doc. Nos. 41 & 42.

   [7/]Defendants Cox and Cruz filed joinders in Ostendorp's
Objection.  Doc. Nos. 47 & 48.

   [8/]The facts as recited in this Order are for the purpose of
disposing of the current motion and are not to be construed as

4

On September 29, 2009, Defendant HIHS executed a search warrant at Plaintiff's residence and seized seventeen of his dogs.  Sec. Am. Compl. ¶¶ 28-30.  Plaintiff alleges that on October 1 and 2, 2009, he and his Mother, Defendant Kawena Young, consulted with Ostendorp and Cox to obtain legal advice for Plaintiff regarding the HIHS's entry into Plaintiff's home and seizure of his dogs, and potential criminal charges against Plaintiff.  Id. ¶¶ 31, 34.  Allegedly, on October 2, 2009, Ostendorp, acting as Plaintiff's attorney, contacted the Hilo prosecutor's office.  Id. ¶ 32.  Ostendorp also allegedly contacted Plaintiff's psychologist to discuss Plaintiff's legal matters.  Id. ¶ 33.  Plaintiff alleges that Ostendorp and Cox traveled with him to the Big Island for further consultation and investigation of his legal difficulties with HIHS.  Id. ¶ 36.

On October 7, 2009, Ostendorp and Defendant Kawena Young entered into a retainer agreement ("the retainer agreement").  Ostendorp's Mot. Ex. A, at 1.  The retainer agreement stated that Ostendorp would be "representing [Defendant Kawena Young] in protecting [her] financial assets, reducing [her] financial liabilities and to help to keep Warne Keahi Young out of jail."  Id.  The agreement contained the following alternative dispute resolution provision:

---

findings of fact that the parties may rely on in future proceedings.

As we have discussed, if you ever have any questions regarding this representation, we encourage you to ask them promptly and we are confident that appropriate answers can be provided to satisfy your inquiry.  If that does not occur, and you believe that such a problem needs formal resolution, the following discussion is how we will resolve such a problem.

First, we will jointly undertake mediation. Unless we agree to the contrary, the Dispute Prevention & Resolution office in Honolulu will choose the mediator.  We will jointly in good faith participate in at least one mediation session, scheduled by the mediator, prior to taking any further action.

Second, if mediation does not resolve the problem, then with the exception of injunctive or other equitable action, all disputes must be submitted to binding arbitration.  As was true for mediation, the arbitration shall be conducted under then-existing rules of Dispute Prevention & Resolution office in Honolulu.

<u>Id.</u> at 3.

The bottom of the retainer agreement contains Ostendorp's signature, the statement that "Roberta Kawena Young hereby engages the Law Office of Michael G.M. Ostendorp as his [sic] legal counsel and otherwise agrees to honor the terms hereof," and Defendant Kawena Young's signature, respectively. <u>Id.</u>

On October 7, 2009, Ostendorp allegedly drafted a broad power of attorney dated September 12, 2009, that contained Plaintiff's forged signature and designated Defendant Kawena Young as his attorney-in-fact.  Sec. Am. Compl. ¶¶ 64-66.

Plaintiff alleges that Defendant Kawena Young used the power of attorney to complete an HIHS animal surrender policy form, which Ostendorp then submitted to HIHS.  Id. ¶¶ 66-68.  Thereafter, HIHS allegedly killed Plaintiff's dogs.  Id. ¶ 69.

Plaintiff alleges that on October 8, 10, and 12, 2009, he and Defendant Kawena Young met with Ostendorp to discuss Plaintiff's legal matters.  Id. ¶¶ 44, 46-47.  On October 15, 2009, Defendant Kawena Young terminated her attorney-client relationship with Ostendorp via certified mail.  Id. ¶ 49.  On October 19, 2009, Ostendorp confirmed this termination via a letter addressed to Defendant Kawena Young.  Id. ¶ 50.  Ostendorp attached a billing statement addressed to "Roberta K. Young/Warne K. Young (10/1/09-10/15/09)" to the letter.  Id.

On October 29, 2009, Plaintiff filed a complaint against Defendants Ostendorp and Cox with the Office of Disciplinary Counsel.  Ostendorp's Mot. Ex. C.  Ostendorp filed a response on November 18, 2009, in which he stated that "Keahi Young was never my client."  Pl.'s Opp'n Ex. 2.  Ostendorp stated that Plaintiff had his own attorney of record and that his "role in keeping [Defendant Kawena Young's] son out of jail did not include representing Keahi."  Id.  He further stated that his negotiations with HIHS were on behalf of Defendant Kawena Young and were to "address the issues of her property and the dogs."  Id.  Ostendorp stated that Plaintiff's allegations were

7

"ridiculous, especially in light of the fact that I was never his attorney."  Id.

In Ostendorp's response to Plaintiff's First Amended Complaint, Ostendorp admitted that there was "a contractual relationship" between him and Plaintiff.  See Ostendorp Dec. ¶ 1. In his answer to the Second Amended Complaint, however, Ostendorp stated he was "without sufficient information or knowledge to form a belief as to the truth or falsity" of Plaintiff's statement that Plaintiff and Ostendorp were in a contractual relationship.  Compare Doc. No. 50, ¶ 1, with Sec. Am. Compl. ¶ 131.  Defendant Ostendorp now seeks to compel Plaintiff to mediate and/or arbitrate his claims pursuant to the retainer agreement between Defendant Kawena Young and Ostendorp.

In the F&R, the Magistrate Judge exercised his discretion to consider Plaintiff's Opposition, which was filed one day late.  F&R at 8-9.  The Magistrate Judge concluded that Plaintiff could not be bound by the dispute resolution provision of the retainer agreement because he was not a signatory.  Id. at 12.  He concluded that Ostendorp had failed to show that any of the theories upon which a nonsignatory may be compelled to arbitrate applied.  Id.  Specifically, the Magistrate Judge rejected Defendant's equitable estoppel argument based on the finding that there was no evidence that Plaintiff knowingly exploited the retainer agreement.  Id. at 15.  The Magistrate

8

Judge declined to consider Ostendorp's third-party beneficiary argument based on his determination that Ostendorp first made the argument in his reply.  Id. at 13 n.7.  The Magistrate Judge alternatively concluded that Plaintiff's claims were not within the scope of the dispute resolution provision.  Id. at 18.  He explained that the plain language of that provision mandates mediation and/or arbitration when Defendant Kawena Young believes that a problem needs formal resolution, which was not broad enough to include Plaintiff's claims.  Id. at 19.

The Magistrate Judge granted in part Defendant's Motion to Stay, ordering a stay until this Court issues a final decision regarding Ostendorp's Motion to Compel.  Id. at 20.  Because a final order regarding Ostendorp's request to compel arbitration had not been rendered, the Magistrate Judge concluded that Ostendorp's Motion to Disqualify was premature.  Id. at 21.

## LEGAL STANDARD

### I.   Review of the Findings & Recommendation

A district court reviews de novo those portions of a magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Haw. Local Rule 74.2.  The district court may accept those portions of the findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record.

Stow v. Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003).
The district court may receive further evidence or recommit the
matter to the magistrate judge with instructions.  28 U.S.C.
§ 636(b)(1).  It may also consider the record developed before
the magistrate judge.  D. Haw. Local Rule 74.2.  The district
court must arrive at its own independent conclusions about those
portions of the magistrate judge's report to which objections are
made, but a de novo hearing is not required.  United States v.
Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

## II.   Review of the Order Denying in Part and Granting in Part the Stay and Denying the Motion to Disqualify

In contrast, the district judge ordinarily considers
the appeal of a magistrate judge's order determining a
nondispositive pretrial matter under a "clearly erroneous or
contrary to law" standard.  See D. Haw. Local Rule 74.1; see also
28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a).  The Court,
however, may also reconsider sua sponte any matter determined by
a magistrate judge in a nondispositive determination.[9/]  See D.

---

[9/]There is a split of authority regarding whether a motion
to compel arbitration is a dispositive or nondispositive motion.
See Amisil Holdings Ltd. v. Clairum Capital Mgmt., 622 F. Supp.
2d 825, 827 n.1 (N.D. Cal. 2007) (collecting cases).  Although
this district has not made a definitive determination on this
issue, this district has treated such motions as dispositive.
See Hawaiian Telecom Comm'ns, Inc. v. Tata Am. Int'l Corp, Civ.
No. 10-00112 HG-LEK, 2010 WL 2594495 (D. Haw. June 24, 2010).
The Magistrate Judge recognized this local practice and issued a
findings and recommendation rather than an order on the Motion to
Compel.  Thus, the Court will review the F&R de novo.  In any
event, even if it were a nondispositive motion, the Court
exercises its discretion to review the Magistrate Judge's
conclusions de novo.

Haw. Local Rule 74.1.

The Court finds that a hearing in this matter is neither necessary nor appropriate.  <u>See</u> D. Haw. Local Rule 7.2(d).

## DISCUSSION

Ostendorp contends that the Magistrate Judge committed several errors.  Ostendorp first objects to the Magistrate Judge's consideration of Plaintiff's Opposition because it was filed one-day late. Ostendorp's Obj. 23-24.

Second, Ostendorp asserts the Magistrate Judge erred by relying on an alleged oral contract between Plaintiff and Ostendorp to find that Ostendorp's equitable estoppel argument failed. <u>Id.</u> at 7.  Ostendorp asserts that this was error because Plaintiff first mentioned the alleged oral contract in his Opposition and has not provided any supporting evidence.  <u>Id.</u> at 5.

Third, Ostendorp objects to the Magistrate Judge's refusal to consider his third-party beneficiary arguments.  <u>Id.</u> at 10.  Ostendorp asserts that this was error because he made the third-party beneficiary arguments in his prior pleadings and also in response to arguments in Plaintiff's Opposition related to an alleged oral contract.  <u>Id.</u> at 11.

Fourth, Ostendorp objects to the finding that Plaintiff's claims were not subject to the dispute resolution

provision.  Specifically, he objects to the finding that the retainer agreement did not unambiguously express an intent to submit disputes to arbitration, that the subject matter of the dispute was not within the scope of the arbitration agreement, and that Ostendorp's equitable estoppel claim failed.  Id. at 14-23.

Finally, Ostendorp objects to the Magistrate Judge's partial denial of his Motion to Stay and denial of his Motion to Disqualify Plaintiff's Counsels.

The Court will address the Magistrate Judge's consideration of Plaintiff's Opposition, the merits of Ostendorp's Motion to Compel, and Ostendorp's Motions to Stay and to Disqualify Plaintiff's Counsels, respectively.  The Court will not address Ostendorp's other objections as they are inconsequential to the disposition of the instant motions.

## I.   Plaintiff's Untimely Opposition

In deciding to consider Plaintiff's Opposition, the Magistrate Judge explained that it was only one day late and that Ostendorp was not prejudiced because he had – and took – a full fourteen days thereafter to file his reply.  F&R at 8-9.  Ostendorp's only argument in support of his objection is that deadlines should be taken seriously.  Ostendorp's Obj. 23-24.  Although true, Plaintiff barely missed the filing deadline.  Ostendorp does not assert that he was prejudiced in anyway by the

one day delay.  Consequently, the Magistrate Judge did not abuse

his discretion in considering Plaintiff's Opposition.

## II.  Motion to Compel Mediation and/or Arbitration

### A.  Legal Framework

Hawaii has adopted the Uniform Arbitration Act,

codified in Hawaii Revised Statutes ("H.R.S.") Chapter 658A.[10]

Under this Act, an agreement to arbitrate a controversy existing

or arising between the parties is "valid, enforceable, and

irrevocable except upon a ground that exists at law or in equity

for the revocation of a contract."  H.R.S. § 658A-6(a).  If a

party refuses to arbitrate, § 658A-7(a) provides that upon motion

of a person showing an agreement to arbitrate, "the court shall

. . . order the parties to arbitrate unless it finds that there

is no enforceable agreement to arbitrate."  If there is not an

enforceable arbitration agreement, the court "shall not, pursuant

to subsection (a) . . . order the parties to arbitrate."  H.R.S.

§ 658A-7(c).

Before granting a motion to compel arbitration, a court

must generally determine: (1) that there is a valid agreement to

arbitrate between the parties, and (2) that the dispute falls

within the scope of that agreement.  See Haw. Med. Ass'n v. Haw.

---

[10]/Defendant Ostendorp's Motion is governed by Hawaii law, rather than the Federal Arbitration Act, because the retainer agreement at issue does not involve a maritime transaction or a transaction in interstate commerce.  See 9 U.S.C. § 2.

Med. Serv. Ass'n, 148 P.3d 1179, 1193 (Haw. 2006).  In making

such a determination, a court should apply contract law

principles.  See id. at 1194.

    **B.    The Validity of the Agreement**

        To constitute a valid and enforceable arbitration

agreement, the agreement must have the following three elements:

"(1) it must be in writing; (2) it must be unambiguous as to the

intent to submit disputes or controversies to arbitration; and

(3) there must be bilateral consideration."  Douglass v. Pflueger

Haw., Inc., 135 P.3d 129, 158-60 (2006).  Here, it is undisputed

that the dispute resolution provision is in writing, there is an

unambiguous intent for Defendant Kawena Young and Ostendorp to

submit to arbitration, and there is bilateral consideration

between Ostendorp and Defendant Kawena Young.  Plaintiff,

however, is not a party to the retainer agreement and contends

that therefore, there is not an unambiguous intent for him to

submit disputes to arbitration.

        "Arbitration is a matter of contract," and thus, "a

party cannot be required to submit to arbitration any dispute

which he has not agreed so to submit."  Sher v. Cella, 160 P.3d

1250, 1254 (Haw. App. 2007) (internal quotations omitted).

Hawaii appellate courts have recognized that a signatory may bind

a nonsignatory to an arbitrate agreement pursuant to the

following theories: "1) incorporation by reference; 2)

14

assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." In re United Public Workers, AFSCME, Local 646, AFL-CIO, 244 P.3d 609, 616 (Haw. App. 2010) (internal quotations omitted); Sher, 160 P.3d at 1254.  Hawaii appellate courts have also recognized that a signatory may bind a third-party beneficiary to an arbitration agreement.  See Sher, 160 P.3d at 1256; Vickey v. Hastert, 201 P.3d 628 (Table), 2009 WL 383682, at *9-10 (Haw. App. 2009).

Ostendorp argues that Plaintiff may be bound to the agreement under equitable estoppel and third-party beneficiary theories.  Even if Ostendorp is correct, Plaintiff's claims are not within the scope of the arbitration provision and thus the Court cannot compel Plaintiff to arbitrate his claims.  Thus, the Court finds it unnecessary to consider Ostendorp's arguments with respect to whether Plaintiff is bound by the arbitration agreement despite being a nonsignatory.[11]

C.    **The Scope of the Arbitration Provision**

"Although the public policy underlying Hawaii law strongly favors arbitration over litigation, the mere existence of an arbitration agreement does not mean that the parties must

---

[11]/[**Judge:** Because I think that Ostendorp's estoppel and third-party beneficiary arguments are valid, I think it is best to assume for the sake of argument that Plaintiff may be bound as a nonsignatory.  I do not think it necessary to address this issue because it would not support an alternative reason to deny the Motion to Compel Arbitration.]

submit to an arbitrator disputes which are outside the scope of the arbitration agreement." <u>Haw. Med. Ass'n</u>, 148 P.3d at 1194 (internal quotations omitted).  Whether an issue falls within the scope of an agreement to arbitrate "depends on the <u>wording of the contractual agreement to arbitrate</u>." <u>Id.</u> (internal quotations omitted).  A court should interpret the agreement terms according to their plain, ordinary meaning and accepted use in common speech.  <u>See</u> <u>State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.</u>, 978 P.2d 753, 762 (Haw. 1999).

Based on the plain language of the retainer agreement, Plaintiff's claims are not within the scope of the dispute resolution provision.  The retainer agreement states that if "<u>you believe</u> that a problem needs formal resolution, the following discussion is how <u>we</u> will solve such a problem." <u>See</u> Ostendorp's Mot. Ex. A (emphasis added).  The retainer agreement is addressed to and signed by only Defendant Kawena Young.  <u>See</u> <u>id.</u>  Therefore "you" unambiguously refers to Defendant Kawena Young.  Likewise, "we" unambiguously refers to the only two parties to the contract - Defendant Kawena Young and Ostendorp.

As the Magistrate Judge explained, Plaintiff's claims against Ostendorp do not arise from a problem that Defendant Kawena Young believes needs formal resolution and thus are not within the scope of the dispute resolution provision.  The dispute resolution mandate is limited to "we," <u>i.e.</u>, Defendant

16

Kawena Young and Ostendorp.   "'Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties.'"   <u>Upper Lakes Towing Co. v. ZF Padova</u>, No. 2:08-CV-63, 2009 WL 4730762, at *2 (W.D. Mich. Dec. 4, 2009) (quoting <u>In re Southwind Shipping Co.</u>, 709 F. Supp. 79, 82 (S.D.N.Y. 1989)); <u>see</u> <u>Parkway Dodge, Inc. v. Yarbrough</u>, 779 So.2d 1205, 1209-10 (Ala. 2000) (preventing a nonsignatory manufacturer from enforcing an arbitration provision that was specifically limited to disputes between the signing parties ("dealer" and "purchaser") because the language was not broad enough to reach the manufacturer).

        In <u>Upper Lakes Towing Co. v. ZF Padova</u>, No. 2:08-CV-63, 2009 WL 4730762 (W.D. Mich. Dec. 4, 2009), the court considered whether a nonsignatory to a contract containing a clause compelling arbitration for "disputes arising <u>between both parties</u>" could enforce the clause against a signatory.   <u>Id.</u> at *2.   The court concluded that the dispute between the signatory and the nonsignatory was not within the scope of the arbitration provision because the nonsignatory was not a party to the contract.   <u>Id.</u>   The court explained that the provision "did not state 'all disputes' without qualification or even 'all disputes

arising in connection with the contract.'"[12]  Id.

Similarly, in Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F. Supp. 809 (S.D.N.Y. 1987), the court held that a nonsignatory cargo owner could not compel arbitration pursuant to an agreement that required arbitration for "any dispute aris[ing] between Owners and the Charters."  Id. at 810.  The court concluded that although the arbitration clause was incorporated into a bill of lading to which the nonsignatory was connected, the clause was not broad enough to cover the dispute because the nonsignatory was not an "owner" or "charterer" within the meaning of the clause.  Id. at 814-15. The court explained that "courts recognize that parties are free to choose their contractual language, and an arbitration clause governing 'all disputes arising out of this charter' is meant to have a much broader application than one governing disputes between 'owners and the charterers.'"  Id. at 814 (citation omitted).  The court thus refused to "expand the arbitration clause beyond its plain meaning."  Id.

---

[12]/The court in Upper Lakes Towning Co., recognized that there were cases in which courts appear to have allowed an arbitration agreement to be enforced by or against a nonsignatory despite that the agreement was limited by its terms to disputes between the parties to the agreement.  Id. at *3.  The court found these cases inapplicable, however, because the nonsignatories stood in the shoes of the signatory as either successors in interest or by assumption.  Id.  Ostendorp does not make any allegations that suggest Plaintiff should stand in the shoes of Defendant Kawena Young as a successor in interest or by assumption.

Here too, the provision at issue is not broadly worded. Rather, it expressly restricts mandatory dispute resolution to problems between Defendant Kawena Young and Ostendorp that Defendant Kawena Young believes needs formal resolution. Ostendorp argues that he is entitled to assert any claims or defenses that he could assert against Defendant Kawena Young against Plaintiff because Plaintiff is a third-party beneficiary. Ostendorp's Obj. 18.  He contends that consequently, because Plaintiff believes there is a problem requiring formal resolution, this dispute is arbitrable.  Id.

Although Ostendorp may assert Plaintiff's status as a third-party beneficiary to bind him to an arbitration agreement in certain circumstances, the claims at issue must be within the scope of the arbitration provision before Plaintiff can be compelled to arbitrate.  See Cont'l U.K. Ltd., 658 F. Supp. at 814-15.  The court in Upper Lakes Towing Co., rejected a similar argument as that made by Ostendorp.  It explained that the fact that the parties were aware of the nonsignatory's role when they entered into the agreement "suggests that the arbitration provision, as drafted, was intended to exclude [the nonsignatory]." Upper Lakes Towing Co., 2009 WL 4730762, at *3. Thus, to allow the nonsignatory to enforce the provision "would be inconsistent with the plain meaning of the text and would override the clear intent of the parties[.]"  Id. (alteration in

19

original) (internal quotations omitted).

In this case, the parties were aware that Ostendorp's role included keeping Plaintiff out of jail because it was expressly stated in the retainer agreement.  Nonetheless, the parties limited the application of the dispute resolution provision to Defendant Kawena Young and Ostendorp and the scope to problems that Defendant Kawena Young believes needed formal resolution.  To substitute Plaintiff in the place of Defendant Kawena Young for purposes of defining the terms of the dispute resolution provision would unduly expand the scope of the provision beyond the plain meaning of its express terms.

Accordingly, Plaintiff's claims are not within the scope of the dispute resolution provision.

## III. Motion for Stay and Disqualification of Plaintiff's Counsels

Ostendorp also objects to the Magistrate Judge's Order denying in part his Motion to Stay.[13]  Because the Court has concluded that Plaintiff's claims are not subject to arbitration, Ostendorp's Motion to Stay is moot.

The Magistrate Judge concluded that until there is a final determination by this Court regarding arbitrability,

---

[13]Motions to stay are non-dispositive motions that are reviewed under the clearly erroneous and contrary to law standard of review.  Ka'aina v. Kauai Island Util. Co-op., Civ. No. 10-00169 ACK-LEK, 2010 WL 3834999, at *3 (D. Haw. Sept. 24, 2010).  Thus, technically Ostendorp should have appealed rather than objected to the Magistrate Judge's determination.

Ostendorp's Motion to Disqualify is premature.  F&R at 21.
Because this Court has adopted the Magistrate Judge's conclusion
that Plaintiff cannot be compelled to arbitrate, Ostendorp's
Motion to Disqualify is no longer premature and the Magistrate
Judge should now consider it.

<u>**CONCLUSION**</u>

          For the foregoing reasons, the Court adopts the
Magistrate Judge's F&R as modified by this Order.  Defendant
Ostendorp's Motion to Stay is moot.  The Court directs the Clerk
of Court to lift the stay in this case.  The Court recommits
Ostendorp's Motion to Disqualify Plaintiff's Counsel to the
Magistrate Judge.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 19, 2012.




_____
Alan C. Kay
Sr. United States District Judge


<u>Warne Keahi Young v. County of Hawaii, et al.</u>, Civ. No. 11-00580 ACK-RLP:
Order Adopting F&R as Modified, Lifting the Stay of Proceedings, and Referring
Ostendorp's Motion to Disqualify to the Magistrate Judge.